## CASE NO. 22-50915

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

### CHRISTOPHER GRISHAM, JAMES EVERARD

Plaintiffs-Appellants

v.

### RENE VALENCIANO, OLMOS PARK CHIEF OF POLICE J. LOPEZ, OFFICER HECTOR RUIZ, OFFICER A. VIERA, CITY OF OLMOS PARK

Defendants-Appellees

On Appeal from the United States District Court for the
Western District of Texas-San Antonio Division
Civil Action No. SA-20-CV-00387-OLG

### APPELLEES' BRIEF

PATRICK C. BERNAL
ADOLFO RUIZ
DENTON NAVARRO ROCHA BERNAL & ZECH, P.C.
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:    (210) 227-3243
Facsimile:    (210) 225-4481
COUNSEL FOR APPELLEES

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to the 5th Cir. R. 28.2.1, the undersigned counsel of record for Appellees City of Olmos Park, J. Lopez, Hector Ruiz, Rene Valenciano, and A. Viera certifies that the following listed persons and entities have an interest in the outcome of the case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| Plaintiffs-Appellant | Counsel for Appellant |
|---|---|
| James Everard | Grable, Grimshaw, PLLC<br>Brandon J. Grable |
| Christopher Grisham | Grable, Grimshaw, PLLC<br>Brandon J. Grable |
| **Defendant-Appellees** | **Counsel for Appellees** |
| City of Olmos Park | DENTON, NAVARRO, ROCHA, BERNAL & ZECH, PC<br>Patrick Bernal<br>Adolfo Ruiz |
| James Lopez | DENTON, NAVARRO, ROCHA, BERNAL & ZECH, PC<br>Patrick Bernal<br>Adolfo Ruiz |
| Hector Ruiz | DENTON, NAVARRO, ROCHA, BERNAL & ZECH, PC<br>Patrick Bernal<br>Adolfo Ruiz |
| Rene Valenciano | DENTON, NAVARRO, ROCHA, BERNAL & ZECH, PC<br>Patrick Bernal<br>Adolfo Ruiz |
| Adrian Viera | DENTON, NAVARRO, ROCHA, BERNAL & ZECH, PC<br>Patrick Bernal<br>Adolfo Ruiz |

_/s/ Patrick C. Bernal_
PATRICK C. BERNAL
_Attorneys for Appellees_

## STATEMENT REGARDING ORAL ARGUMENT

Appellees City of Olmos Park, Police Chief Rene Valenciano, Sergeant Hector Ruiz, Officer James Lopez, and Officer Adrian Viera ("Appellees") believe oral argument is necessary to address the underlying constitutional violation analysis and qualified immunity of the officers and will benefit the Court.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... ii

TABLE OF AUTHORITIES ............................................................... vii

STATEMENT OF JURISDICTION ......................................................1

ISSUES PRESENTED .........................................................2

STATEMENT OF THE CASE ..............................................................3

      A.          Grisham Orchestrated the March 27, 2018, Incident ..........4

SUMMARY OF THE ARGUMENT.......................................................9

ARGUMENT AND AUTHORITIES ................................................................10

     Issue No. 1:  The Trial Court properly granted Appellees' Motion for Summary Judgment and properly denied Appellants' Motion for Partial Summary Judgment and that Appellee officers are entitled to their qualified immunity and the City retains its sovereign immunity under *Monell.* ..................................................................................10

     A.        The District Court properly found probable cause existed for Everard's and Grisham's arrest. ...........................................10

          1.    There was sufficient probable cause to arrest Everard for disorderly conduct..........................................11

2.    There was sufficient probable cause to arrest Grisham. ...............................................................13

B.    Since probable cause existed for Appellees' arrest, there was no unlawful search and seizure. ...........................................................14

C.    Since probable cause existed for Appellants' arrest, Appellees' are entitled to Summary Judgment as a matter of law on Appellants' malicious prosecution claims. .................................................14

D.    Appellants fail to establish a Fourth Amendment violation of Excessive Force. ......................................................................15

1.    In the application of the *Graham* factors, Chief Valenciano's and Officers Ruiz, Lopez and Viera's actions were objectively reasonable, and the use of force was not excessive to the need .........................................................20

a.    Grisham's Claim of Excessive Force. ...................21

b.    Everard's Claim of Excessive Force......................24

E.    Since probable cause existed for Appellants' arrest, they fail on their Unlawful Arrest Claim. .........................................................26

1.    Everard's arrest. ....................................................27

2.    Grisham's arrest. ....................................................30

F......................Appellants do not have a Fourteenth Amendment violation claim............... ...........................................................................31

1.            No Fourteenth Amendment violation for Failure to Intervene and Failure to Render Medical Attention. .................................32

G.            There is no Monell liability for the City of Olmos Park....34

Issue No. 2:   Appellants' issues are based on the same facts that were considered by the District Court in granting Appellees' Motion for Summary Judgment and in denying Appellants' Motion for Partial Summary Judgment....................................................................................36

A.            Appellants' First Amendment claims are too conclusory to withstand Summary Judgment. ...................................................................36

            1.    Appellants cannot show First Amendment violations. ...........................................................................36

            2.    Symbolic and Political Speech ...............................37

            3.    There were no retaliatory actions against Appellants for engaging in protected Speech under the First Amendment ........................................................................40

B.            Appellee officers' conduct did not violate Clearly Established Law. .........................................................................................44

1.      Appellants cannot identify a case that puts Appellees on notice that their specific conduct was a violation of clearly established law.......................................................44

2.      The holding in *Nieves v. Bartlett* was not clearly established law prior to or at the time of Appellants' arrest on March 27, 2018............................................................47

3.      Appellants mischaracterize their Statement of Facts 48

CONCLUSION AND PRAYER.............................................................52

CERTIFICATE OF SERVICE..............................................................53

CERTIFICATE OF COMPLIANCE ....................................................53

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) ..........32

*Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ...36

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017).............................26

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).......19

*Baker v. Linnie Carle McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)................................................................................................... 10, 14, 31

*Bd. of Cnty Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)................................................................................ 35, 36

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..................................................................................................................32

*Bell v. Wolfish*, 441 U.S. 520 , S.Ct. 1861. 60 L.Ed.2d 447 (1979) .......................16

*Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir. 1984) .........................................35

*Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) .. 18, 19

*Brown v. United States*, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921).............11

*Buehler v. City of Austin/Austin Police Dep't,* 824 F.3d 548 (5th Cir. 2016).. 10, 13

*Cass v. City of Abilene*, 814 F.3d 721 (5th Cir. 2016)............................................44

*cf., Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999)...........................................42

*Chambers v. State*, No. 11-18-00227-CR, 2020 WL 4875849 (Tex. App.—Eastland, 2020, pet. ref'd) ....................................................................................12

*Chuttoo v. Horton*, No. 4:20-CV-211-SDJ, 2022 WL 4100807 (5th Cir. 2022).....22

*City & Cnty of San Francisco Calif. v. Sheehan*, 575 U.S. 600, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015).............................................................................10

*Cloud v. Stone,* 93 F.3d 379 (5th Cir. 2021) ...................................... 22, 25

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ............................32

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017) ...................26

*Deville v. Marcantel* 567 F. 3d 156 (5th Cir. 2009) ...............................18

*District of Columbia v. Wesby*, 583 U. S. ——, —— – ——, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018).............................................................................47

*Est. of Larsen ex rel. Stuedivan v. Murr*, 511 F.3d 1255 (10th Cir. 2008)..............11

*Ex parte Poe*, 491 S.W.3d 348 (Tex. App.—Beaumont 2016, pet. r'ef'd)...... passim

*Freeman v. Tex. Dep't of Crim. J.*, 369 F.3d 854 (5th Cir. 2004).........................37

*Galvan v. City of San Antonio*, 435 F. App'x 309 (5th Cir. 2004) .........................19

*Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001) ...............................26

*Gonzalez v. Trevino,* 42 F.4th 487 (5th Cir. 2022) ...................................40

*Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) . passim

*Griggs v. Brewer,* 841 F.3d 308 (5th Cir. 2016).....................................17

*Haggerty v. Tex. Southern Univ.*, 391 F.3d 653 (5th Cir. 2004) ..................... 26, 29

*Halcomb v. Woods*, 767 F.Supp.2d 123 (D.D.C. 2011) .................................. 10, 17

*Hare v. City of Corinth, Miss.,* 74 F.3d 633 (5th Cir. 1996) (en banc) ..................33

*Hunter v. City of Houston*, 564 F. Supp. 3d 517 (S.D. Tex. 2021) ........................27

*Jiron v. City of Lakewood*, 392 F.3d 410 (10th Cir. 2004).......................................11

*Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686
    (5th Cir. 2023)...................................................................................19

*Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973)....................................................16

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) ........................................ 40, 42, 43

*Kisela v. Hughes,* 200 L.Ed.2d 449, 138 S. Ct. 1148 (2018)..................... 18, 19, 43

*Lozman v. City of Riviera Beach, Fla*., 201 L.Ed.2d 342, 138 S.Ct. 1945 (2018) ..41

*Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342 (5th Cir. 1999).......................20

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ..............47

*McLin v. Ard,* 866 F.3d 682 (5th Cir. 2017 ...........................................................31

*Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857 (N.D. Tex.
    2018)..................................................................................................... 44, 45

*Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ........................... passim

*Mullenix v. Luna*, 577 U.S. 7, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) ..... 18, 19, 47

*Nieves v. Bartlett*, 204 L.Ed.2d 1, 139 S. Ct. 1715, 1727 (2019) .............. 40, 41, 47

*Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003) .....................................................38

*Pfannstiel v. City of Marion*, 918, F.2d 1178 (5th Cir. 1990) ................................20

*Piotrowski v. City of Hous*., 237 F.3d 567 (5th Cir. 2001).....................................42

*Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 20123, 188 L.Ed.2d 1056 (2014) ...17

*Poole v. City of Shreveport,* 691 F. 3d 624 (5th Cir. 2012)....................................19

*Rivas-Villegas v. Cortesluna*, No. 20.1539, 2021 WL 4822662 (2021)........... 47, 48

*Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995)........................................................13

*Rountree v. Dyson,* 892 F.3d 681 (5th Cir. 2018)....................................................26

*Ryburn v. Huff*, 565 U.S. 469 (2012) .......................................................................20

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ..............19

*Schmidt v. Texas*, No. H-08-cv-01696, 2009 WL 7808953 (S.D. Tex. Aug. 17, 2009).........................................................................................................................33

*Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) ..............................................36

*Spence v. Washington* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) .. 38, 39

*State v. Ross*, 573 S.W. 3d 817 (Tex. Crim. App. 2019) ................................. 12, 29

*Tarver v. City of Edna,* 410 F.3d 745 (5th Cir. 2005) .............................................18

*The Estate of Dillon Taylor v. Salt Lake City* No. 19-4085, 2021WL 4955461 (10th Cir. October 26, 2021)................................................................................ 10, 11, 13

*Thompson v. Clark*, 212 L.Ed.2d 382, 142 S. Ct. 1332 (2022) ........................ 14, 15

*Vann v. City of Southaven, Miss.*, 884 F.3d 307 (5th Cir. 2018)............................44

*Victoria W. v. Larpenter*, 369 F.3d 475 (5th Cir. 2004) ........................................35

*Virginia v. Black*, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ............38

*White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) ............. 18, 47

*Wilson v. Stroman,* 33 F.4th 202 (5th Cir. 2022)....................................................31

*Wortman v. United States* No. 5:14-cv-04567-PSG, 2015 WL 2251168 (N.D. Cal, 2015).........................................................................................................................38

**Statutes**

TEX. GOV'T CODE § 411.207...................................................................................46

TEX. GOV'T CODE § 441.205...................................................................................46

TEX. PENAL CODE § 38.15.............................................................................46

TEX. PENAL CODE § 38.15(a)(1) ...............................................................30

TEX. PENAL CODE § 38.15(a) ......................................................................30

TEX. PENAL CODE § 38.15(d) ......................................................................30

TEX. PENAL CODE § 42.01........................................................... 13, 46

TEX. PENAL CODE § 42.01 (a)(8) ................................................. passim

TEX. PENAL CODE § 42.01(a) .....................................................................27

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal of the District Court's Order granting Appellees' Motion for Summary Judgment based on qualified immunity and municipal liability based upon Appellants' lawsuit alleging violations of 42 U.S.C. § 1983. (ROA.1265-1266). This Honorable Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This appeal is from a final order or judgment that disposes of all parties' claims.

## ISSUES PRESENTED

**Issue No. 1:**  The Trial Court properly granted Appellees' Motion for Summary Judgment and properly denied Appellants' Motion for Partial Summary Judgment and that Appellees' officers are entitled to their qualified immunity and the City retains its sovereign immunity under *Monell.*[1]

**Issue No. 2:**  Appellants' issues are based on the same facts that were considered by the District Court in granting Appellees' Motion for Summary Judgment and in denying Appellants' Motion for Partial Summary Judgment.

---

[1] *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)

## <u>STATEMENT OF THE CASE</u>

Appellants Christopher Grisham and James Everard (hereinafter "Grisham" or "Everard" and/or collectively referred to herein as "Appellants") are self-proclaimed gun activists.[2] Appellants sued the City of Olmos Park, Olmos Park Police Chief Rene Valenciano, Police Sergeant Hector Ruiz, and Police Officers Adrian Viera, and James Lopez for arresting Appellants on March 27, 2018, at the corner of McCullough Avenue and Earl Street in the City of Olmos Park, Texas.

Appellants are active on social media. Everard posts videos from his YouTube account announcing open carry protests and/or rallies and goes by the username, "NOT SO SLIM JIM". (ROA.2170:6-10, 2188:1-5). The video content contains his beliefs concerning individuals who openly carry firearms in Texas and the peace officers' encounters with these individuals. (ROA.2173:24-25, 2174:1-3, 2189:6-13, 2190:19-25, 2191:1-4).

Grisham also has his own YouTube account under the name of "CJ Grisham", where he posts videos that contain provocative topics along with Grisham's commentaries. Grisham also creates the content and monitors the comments on the Open Carry Texas YouTube channel. (ROA.2223:1-25, 2224:1-25).

Everard uses YouTube videos to inform other gun activists of their exploits

---

[2] Also referred to as "auditors" and by the police community as "police agitators".

and arrests in order to increase the number of viewers to their YouTube channel for entertainment. (ROA.2196:21-25, 2198:20-25, 2199:1-8, 2217).  Appellants obtain revenue from their YouTube channels through payments from viewers through apps such as Venmo, PayPal, and Cash App. (ROA.2225:1-3, 2254:25, 2255:1-20). Viewers that see their videos and subscribe to their YouTube channels contribute money to Appellants.  (ROA.2199:9-25, 2200:1-25, 2201:1-8).

Both Everard's and Grisham's YouTube channels invite individuals to comment on the video and/or the discussion occurring at the time.  (ROA.2202:22-25, 2203:1-7).  Everard uses some of his own videos to advertise upcoming rallies or protests and makes exaggerated claims where he indicates to his listeners that he would be, "armed to the fucking teeth" so that law enforcement officers would be outnumbered and not confront the protestors or rally participants. Everard refers to these videos as "shit-talking videos" to get people excited about coming to the rallies and/or protests.  (ROA.2190:19-25, 2191:1-25, 2192:1-25, 2193:3-25, 2194:1-25, 2195:1-3, 2196:1-12, 2216).

## A.     <u>Grisham Orchestrated the March 27, 2018, Incident</u>

The incident made the basis of Appellants' lawsuit stems from a telephone call Grisham made to Chief Valenciano on March 26, 2018.  Grisham asked Chief Valenciano: "If I come to Olmos Park, I want to know if, I guess, the police are going to draw guns on me if I'm lawfully carrying"?  He did not indicate a date

when he would arrive, nor did he indicate that he was going to organize a protest or rally in Olmos Park. Grisham believed that he had no duty to tell Chief Valenciano. (ROA.2245:11-25, 2246:1-8, 2248:2-5, 2260 [time stamp 5:09-5:33]). Chief Valenciano acknowledged that it would be legal to open carry a long gun in public and a handgun with a valid license as long as that person was not breaking any other laws. (ROA.2260 [time stamp 1:44-2:00, 3:30-3:37, 5:35-5:47]).

After his phone call with Chief Valenciano, Grisham planned the encounter with the police for the following day. (ROA.2226:5-17, 2246:12-18). Grisham selected Everard as one of the four individuals to come to Olmos Park because he was a veteran and would not overreact if Olmos Park violated their rights. As one of the Directors for Open Carry Texas, Everard volunteered first to carry the long gun. (ROA.2227:25, 2228:1-15). Grisham indicated that members of Open Carry Texas go around the State to educate people and get them used to seeing a good guy with a gun. Grisham's plan was to **"escalate"**[3] from one to four people walking with long guns because he wanted to see the "reality in Olmos Park" meaning the people they were going to Olmos Park for were **not** Open Carry Texas members and he wanted to go to the City before their scheduled major protest.[4]

---

[3] "If -- if everything went well, we would put two people out there. If everything went well, we would put three people out there. . . . And then if everything went well, we'd put four people out there". (ROA.2229:18-24, 2231:16-18).

[4] See YouTube Audio (ROA.2267 [time stamped 0:09:43]). "Join us for a protest against this tyrant on April 7th at noon, beginning on the south side of the HEB parking lot in Olmos Park.

(ROA.2228:6-25, 2229:1-11). Grisham picked the corner of McCullough Avenue and Earl Street for Everard to stand and display his assault-style rifle on the front of his chest and his holstered handgun until the police arrived. (ROA.2232:4-25, 2233:1-2). Everard testified that he was carrying a .22 rifle altered to look like an assault rifle. (ROA.2204:20-25, 2205:1-14). Grisham also called auditors to video tape the encounter and strategically positioned the auditors at the scene. (ROA.2233:16-24, 2234:1-25).

Citizens called 911 alarmed that an individual was standing at the corner of McCullough Avenue and Earl Street carrying a rifle. (ROA.2268-2269, 2270-2271). One eyewitness called 911 to report seeing Everard on the sidewalk near the street with an assault rifle. (ROA.2270 [time stamp 0:10-0:20], 2271 [time stamp 0:04-0:14]). In later written statements, the witnesses expressed that during the time they called 911 to report Everard with a rifle, they were in fear of their lives and the feeling of being alarmed and scared of an active shooter situation. (ROA.2272-2286). Grisham is aware of this likelihood that people will call the police and report that the individuals with guns are threatening them or pointing their guns at them and that is a reason they film their activism to prove that it is false. (ROA.2235:2-8). Grisham testified that Everard carrying his rifle in front of him was the proper way to carry a rifle pursuant to Open Carry guidelines, and one

---

Bring your lawfully open carried firearm and let's let this chief know that Texans will not stand idly by a police department blatantly violates our rights".

must assume every gun is loaded.  (ROA.2240:17-25, 2241:1-6, 2244:4-11, 2263-2264).

On March 27, 2018, Everard and Grisham were both standing on the corner of McCullough Avenue and Earl Street.  (ROA.2236:5-25, 2237:1-21, 2238:7-19, 2261-2262).  Appellants were aware that this was a high traffic location with a busy Shell gas station across the street.  (ROA.2175:13-18, 2242:23-25, 2243:1-3).  Everard's video (ROA.2215) shows that Chief Valenciano approached Everard in an attempt to assess the situation.  Grisham, who was carrying a visibly holstered .45 caliber semiautomatic handgun over his shirt because, as he said: "It's easier to access it if I need it in self-defense."  (ROA.2238:7-19, 2239:7-14).  He was standing next to Everard.  He indicated on his video that he was there to teach the police about the law.  (ROA.2249:19-25, 2250:1-7, 2265 [time stamp 2:30-2:42]).  Grisham interrupted Chief Valenciano's questioning of Everard while aggressively approaching Everard and the Chief Valenciano to videotape the encounter. Chief Valenciano and Officer Viera's repeated commands for Grisham to "get back" or "move away" were ignored.  (ROA.2251:13-24).  Chief Valenciano then directed Officer Viera to arrest Grisham for interfering in his investigation with Everard. (ROA.2265 [time stamp 4:00-4:14]).  While Viera attempted to handcuff Grisham, Grisham resisted and pulled his arms away resulting in his arm making contact with Officer Viera's forearm.  Chief Valenciano observed armed and unarmed

third parties flanking the officers while Grisham continued to struggle with Officer Viera.  Chief Valenciano addressed the threat of third parties flanking the officers and Grisham's struggle with Officer Viera and tased Grisham causing him to fall backwards and hitting his head on the asphalt.  (ROA.2327 see ¶5, 2328 see ¶12, 2265 [time stamp 4:04-4:30], 2337 [time stamp 5:30-6:00]).  Grisham was then put in handcuffs but refused to walk to the vehicle.  Officers Viera and Lopez lifted Grisham and carried him to the police vehicle.  (ROA.2334 [time stamp 7:40-8:05], 2337 [time stamp 6:55-7:15]).  Olmos Park Police Chief Rene Valenciano then appeared on the scene and approached Appellants, with one hand on his taser.  (ROA.2363-2364 [time stamp 5:25]).  Like the other officers, he told Everard to get on the ground; again, Everard refused to comply.  (ROA.2363-2364 [time stamp 5:25-5:40]).  Everard was also placed in handcuffs and was placed in prone position by Chief Valenciano and Sergeant Ruiz.  (ROA.2336 [time stamp 4:46-6:05]).

Ruiz then walked Everard a few steps away from the road and, with one hand on his arm and another on his upper back, forced him onto his knees in a manner that was slow and controlled. (ROA.2336 [time stamp 6:07-6:23]). Chief Valenciano then came over and both officers grasped Everard's arms and moved him from his knees to a prone position.  (ROA.2336 [time stamp 6:23-6:40). Due to Everard's large body size, he fell when Chief Valenciano and Sergeant Ruiz

attempted to place him on the ground.  (ROA.2336 [time stamp 4:46-4:50]).

Everard did not complain of any injuries after the accident.  (ROA.2334 [time

stamp 9:00-10:16]).  When he returned home to Temple, Texas, after the incident,

he went to a hospital emergency room.  He indicated to the ER personnel that he

was roughed up by cops and his lawyer told him to get checked out. He admitted in

his deposition that his statement to medical personnel was sarcastic.

(ROA.2206:10-25, 2207:1-23).

## SUMMARY OF THE ARGUMENT

The Appellee officers are entitled to qualified immunity because probable

cause existed to arrest the Appellants for interference with the public duties of a

police officer, obstructing a passageway or roadway, and resisting arrest; Everard

was also charged with disorderly conduct—display of a firearm causing alarm, and

Grisham was charged with assault of a public servant.  (ROA.1144, 2377-2378).

Appellants also disobeyed reasonable commands by the officers to deescalate a

situation involving rapidly evolving dangerous circumstances.  The City is likewise

entitled to its sovereign immunity because Appellants did not prove that the City

was liable under *Monell* standards.   Appellees agree with the conclusions of

Magistrate Judge Bemporad's Report and Recommendation (ROA.1130-1159) and

the Chief District Judge Garcia's Order adoption as modified of the Magistrate

Judge Bemporard's Report and Recommendation. (ROA.1265-1266)

## ARGUMENT AND AUTHORITIES

**Issue No. 1:   The Trial Court properly granted Appellees' Motion for Summary Judgment and properly denied Appellants' Motion for Partial Summary Judgment and that Appellee officers are entitled to their qualified immunity and the City retains its sovereign immunity under *Monell*.**

### A.   <u>The District Court properly found probable cause existed for Everard's and Grisham's arrest.</u>

An arrest based on probable cause cannot constitute an unreasonable seizure within the meaning of the Fourth Amendment.  *Halcomb v. Woods*, 767 F.Supp.2d 123 (D.D.C. 2011).  Whether a charge is later dropped, or a defendant is found not guilty <u>is immaterial</u> to the probable cause analysis. *Buehler v. City of Austin/Austin Police Dep't,* 824 F.3d 548, 554 (5th Cir. 2016); *Baker v. Linnie Carle McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  The Constitution does not guarantee that only the guilty may be arrested.  *Id.* at 145. "The ultimate release of charges … is of no significance in the probable cause analysis. "The Constitution is not blind to the fact that police officers are often forced to make split-second judgements." *The Estate of Dillon Taylor v. Salt Lake City* No. 19-4085, 2021WL 4955461*10 (10th Cir. October 26, 2021), *quoting, City & Cnty of San Francisco Calif. v. Sheehan*, 575 U.S. 600, 612, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015).  "The Constitution permits officers to make reasonable mistakes. Officers cannot be mind readers and must resolve ambiguities immediately."; *Taylor* 2021WL 4955461*10*, citing Brown v. United States*, 256 U.S. 335, 343, 41

S.Ct. 501, 65 L.Ed. 961 (1921).

"[I]f a reasonable officer in [the] [d]efendant['s] position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others," that officer's use of force is permissible. *Taylor* 2021WL 4955461*10, citing *Est. of Larsen ex rel. Stuedivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)(emphasis omitted), *quoting, Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004). "Even if the officers misperceived [the suspect's] defensive movements as aggressive, they are entitled to qualified immunity if the misperception was reasonable." *Taylor* 2021WL 4955461 *12. Faced with the situation of Everard, a large man wearing dark clothing with an assault-like rifle, carrying a holstered gun, openly and loudly verbally challenging officers' commands, wearing a bullet proof vest and a hat with the words, "front toward enemy", could be reasonably perceived by an officer as a threat. (ROA.2302-2303, 2330 see ¶27, 2331, 2181:14-25, 2182:22-25, 2184:18-25, 2186:3-6, 2211-2212, 2214).

### 1.    There was sufficient probable cause to arrest Everard for disorderly conduct.

The supporting Texas case on the disorderly conduct/open carry issue is *Ex parte Poe*, 491 S.W.3d 348 (Tex. App.—Beaumont 2016, pet. r'ef'd). In *Poe,* the court of appeals held that "[A]lthough there clearly [is a] constitutional right [ ] to bear arms ... there is <u>no constitutionally protected right </u>to display a firearm in a

public place *in a manner that is calculated to alarm*." *Id.* at 355. Everard believes that as long as he is not making threats to people or pointing or waving his gun around, he is not breaking the law and he does not believe that he is responsible for how other reasonable people perceive his conduct. (ROA.2172:4-11). Grisham believes that if someone calls and reports a man with a gun and he is pointing it at people or he is acting delusional, the police will then have reasonable suspicion to investigate. (ROA.2247:3-11). Although decided after the date of the incident, Appellees agree with the holding in *State v. Ross*, 573 S.W. 3d 817 (Tex. Crim. App. 2019) and its progeny *Chambers v. State*, No. 11-18-00227-CR, 2020 WL 4875849 *2 (Tex. App.—Eastland, 2020, pet. ref'd)(holding that the meaning of the phrase "a manner calculated to alarm" is "a manner that is objectively likely to frighten an ordinary, reasonable person.").

The Court in *Poe* held the terms used in TEX. PENAL CODE § 42.01 (a)(8) are not vague and should be given their common meaning as follows: "alarm" means "fear, or terror resulting from a sudden sense of danger"; "manner" means the "mode or method in which something is done or happens"; and "calculated" means as, "planned or contrived so as to accomplish a purpose or achieve an effect, thought out in advance, and deliberately planned". *Id* at 354. Utilizing the plain language in the Disorderly Conduct statute, it is reasonable to interpret Everard's conduct was "in a manner that is calculated to alarm." The facts in this case appear

not to provide evidence that Appellants' constitutional rights were violated. Despite the Olmos Park Police Officers' acknowledgement of the new open carry law, it is <u>not</u> clearly established that Everard's above-referenced conduct and appearance was <u>not</u> alarming and excepted from the TEX. PENAL CODE § 42.01 "Disorderly Conduct." Therefore, Appellees had probable cause to detain and arrest Appellants.  Appellees therefore agree with the trial court's determination that probable cause existed to arrest Everard.  (ROA.1143-1146).

## 2.     There was sufficient probable cause to arrest Grisham.

Grisham's actions in interfering with Chief Valenciano's investigation and detention of Everard, resisting arrest and assaulting Officer Viera, while numerous armed and unarmed individuals surrounded the officers could reasonably be perceived by an officer as a serious threat.  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Taylor* 2021WL 4955461at 17, *quoting, Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).   Appellees therefore agree with the trial court's determination that probable cause existed to arrest Grisham. (ROA.1143-1144, 1147-1148).

Under the independent intermediary doctrine, even a police officer who acted with malice will not be liable if the facts supporting the arrest warrant are put before an impartial intermediary, such as a magistrate. *Buehler* 824 F.3d  at 553-

554. Whether a charge is later dropped, or a defendant is found not guilty is immaterial to the probable cause analysis. *Id.*; *Baker* 443 U.S. at 145.

A Magistrate Judge found probable cause for the charges against Everard and Grisham and set bail. The dismissal came afterwards. The independent intermediary doctrine applies in this case where Appellees claim a lack of probable cause for their arrest.

**B.     Since probable cause existed for Appellees' arrest, there was no unlawful search and seizure.**

Appellants assert unlawful search and seizure alleging that Appellees did not have probable cause to search Appellants' items.    (ROA.37 see ¶¶87-95). Appellants just offer mere conclusory allegations.  In addition, Appellants cannot demonstrate that Appellees did not have probable cause for the seizure and detention of their property subject to their arrest.  Appellees agree with the trial court's determination that Appellants' unlawful search and seizure focuses on whether Appellees had probable cause to seize Appellants.  As determined by the trial court, probable cause existed.  (ROA.1143-1144, 1147-1148).

**C.     Since probable cause existed for Appellants' arrest, Appellees' are entitled to Summary Judgment as a matter of law on Appellants' malicious prosecution claims.**

The Supreme Court of the United States recognized that individuals may bring a § 1983 claim for malicious prosecution under the Fourth Amendment. *Thompson v. Clark*, 212 L.Ed.2d 382, 142 S. Ct. 1332, 1335 (2022).  In so

recognizing, the Court laid out the following elements to maintain a malicious prosecution claim:

> (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused.

*Id.* at 1338 (internal quotation marks omitted). As the trial court found, there was probable cause to arrest Appellants in this occurrence. (ROA.1144-1148). Appellants adopt this determination which is set forth in the trial court's order that Appellees are entitled to judgment as a matter of law on Appellants' malicious prosecution claims[5]. (ROA.1265-1266).

## D.    Appellants fail to establish a Fourth Amendment violation of Excessive Force.

There are two distinct moments of alleged force that must be separately analyzed: (1) Chief Valenciano's tasing of Grisham, and (2) Sergeant Ruiz' and Chief Valenciano's attempt to restrain Everard on the ground. (ROA.2265 [time stamp 4:04-40], 2334 [time stamp 7:40-9:05], 2337 [time stamp 5:30-6:00, 6:55-7:15]).

For purposes of liability under 42 U.S.C. §1983, excessive force claims arising from an arrest or investigatory stop invoke the protection provided by the Fourth Amendment of the United States Constitution against "unreasonable

---

[5] Citing *Thompson,* 142 S. Ct. at 1338.

seizure." Fourth Amendment jurisprudence, however, has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Therefore, determining whether the force used to effect a particular seizure is "reasonable" for purposes of the Fourth Amendment requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake. Regarding that analysis, the Supreme Court, in *Graham* provided the following guidance:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), [] its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396

Importantly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Therefore, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id., quoting*, *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973). Instead, "the calculus of reasonableness must embody allowance for the

fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Although all disputed facts are construed in favor of the non-movant in the summary judgment context, evaluating the reasonableness of an officer's use of force requires consideration of how a reasonable officer would have perceived those facts. *Griggs v. Brewer,* 841 F.3d 308, 313–14 (5th Cir. 2016).

"As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79, 134 S.Ct. 20123, 188 L.Ed.2d 1056 (2014). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity

remains intact." *Tarver v. City of Edna,* 410 F.3d 745, 750 (5th Cir. 2005).

"[S]pecificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes,* 200 L.Ed.2d 449, 138 S. Ct. 1148, 1152-53 (2018), *quoting, Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.* at 1153 (internal quotation marks omitted). "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers . . ., but in the light of pre-existing law, the unlawfulness must be apparent." *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 522, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Thus, the "general rules" set forth by Supreme Court precedent "do not by themselves create clearly established law outside 'an obvious case.'" *Id*., *quoting*, *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

In further application of the *Graham* factors, physical force may be necessary to ensure compliance when a suspect "refus[es] to comply with instructions". *Deville v. Marcantel* 567 F. 3d 156, 167 (5th Cir. 2009). A use of

force is reasonable if an officer uses "'measured and ascending' actions that correspond [ ] to [a suspect's] escalating verbal and physical resistance." *Id.*, *citing, Poole v. City of Shreveport,* 691 F. 3d 624, 629 (5th Cir. 2012), *quoting, Galvan v. City of San Antonio*, 435 F. App'x 309, 395 (5th Cir. 2004). "That is because 'an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance.'" *Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, *12 (5th Cir. 2023).

Sufficiently specific "[p]recedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela*, 138 S. Ct. 1148 at 1153 (internal quotation marks omitted).  Otherwise, "qualified immunity protects actions in the hazy border between excessive and acceptable force." *Mullenix*, 577 U.S. at 18 (internal quotation marks omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074. 179 L.Ed.2d 1149 (2011).  It likewise "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau*, 543 U.S. at 198; *see also, Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("The

concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct."). In short, "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation marks omitted).

> 1. **In the application of the *Graham* factors, Chief Valenciano's and Officers Ruiz, Lopez and Viera's actions were objectively reasonable, and the use of force was not excessive to the need**

Appellants provide insufficient facts to support their claim that Appellee officers acted unreasonably. Even if the official's conduct violated a clearly established constitutional right (which Appellants cannot show), the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999); *Pfannstiel v. City of Marion*, 918, F.2d 1178, 1183 (5th Cir. 1990).

Recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," the Supreme Court has warned against "second guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).

### a.     Grisham's Claim of Excessive Force.

The force at issue in Grisham's claim is Chief Valenciano's use of a taser. (ROA.32-33).  Grisham argues that the tasing constituted excessive force because the crimes he was arrested for were not severe, he was not an immediate safety threat, and he was not resisting arrest or attempting to flee. (ROA.901-904).

Considering the totality of the circumstances, Grisham's arguments clearly fail.  The confrontation at issue began not with Grisham, but with Everard standing on a street corner alarming citizens with his weapon, refusing to lower it despite the requests of other officers.  (ROA.2363-2364 [time stamp 0:00-2:25]). Grisham, visibly carrying a weapon, inserted himself into the confrontation and approached the officers. (ROA.2363-2364 [time stamp 2:25]). Officer Viera told Grisham to remain separate from Everard, but Grisham refused. (ROA.2363-2364 [time stamp 2:37]).  The officers continued with verbal negotiations with the Appellants for about three minutes, attempting to get them to put down their weapons and get on their knees.  (ROA.2363-2364 [time stamp 2:37-5:24]).  Eventually, an officer approached the Appellants to separate them. (ROA.2363-2364 [time stamp 05:24]).  When Appellants still refused to comply, Viera joined and approached Grisham with his handcuffs out, attempting to separate him from the officers attempting to subdue Everard.  (ROA.2363-2364 [time stamp 5:37]).  Grisham backed away several feet, still filming with one hand; his other hand started

crossed across his chest, near the handle of his gun, before he lowered it to continue backing away from Viera. (ROA.2363-2364 [time stamp 5:37-5:50]). Viera again attempted to put handcuffs on Grisham, but he continued to back away, tugging his arms away from the officer and yelling. All the while, he still had access to his gun.

The severity of Grisham's arrest and charge was the conglomeration of interference with the public duties of a police officer, assault against a public servant and resisting arrest. Perceiving a threat from Grisham, and the threat from Grisham's followers who were flanking the officers, Chief Valenciano deployed his taser. "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a stun gun to subdue him". *Cloud v. Stone,* 93 F.3d 379, 383 (5th Cir. 2021). Chief Valenciano acted properly in his application of ascending actions. Grisham voluntarily interjected himself into Valenciano's investigation of Everard. Before deploying his taser, Chief Valenciano and Viera both first spoke with Grisham to separate him from Everard. "When facing 'an uncooperative arrestee, officers properly use measured and ascending actions that correspond to the arrestee's escalating verbal and physical resistance.'" *Chuttoo v. Horton*, No. 4:20-CV-211-SDJ, 2022 WL 4100807 *9 (5th Cir. 2022), *citing, Cloud* supra. at 384.

Given these circumstances, it was not unreasonable for Chief Valenciano to believe, at the time he deployed the taser, that Grisham was both a safety threat and resisting arrest.

The violations at issue are not mere traffic violations, but rather weapons-related offenses, including two Class B misdemeanors, one Class A misdemeanor, and one felony. (ROA.900-901). Moreover, Grisham was engaged in more than the mere "passive resistance"; Grisham did not put his hands behind his back when ordered, but instead kept them within reaching distance of his handgun. (ROA.2363-2364 [time stamp 5:37-5:50]). Instead of taking a mere half step with a single foot, Grisham backed away several feet when approached by Officer Viera. (ROA.2363-2364 [time stamp 5:37-5:50]). Grisham did not keep hands still behind his back, but rather tugged them out of Viera's grasp. (ROA.2363-2364 [time stamp 5:37-5:50]). Grisham did all this while the officers were engaged with Everard suspect, with whom they had engaged in verbal negotiations for more than five minutes. (ROA.2363-2364 [time stamp 0:00-5:00]).

For all these reasons, Chief Valenciano did not use excessive force when he tased Grisham. Moreover, even if Chief Valenciano had committed a constitutional violation, Grisham has not introduced any precedent that would clearly establish such a violation.

### b.     Everard's Claim of Excessive Force

Everard claims that Ruiz and Chief Valenciano used excessive force when they "shoved [him] face first into the ashy gravel pavement." (ROA.842). The video evidence does not support the claimed used of excessive force. As noted above, there was a period of time talking to Everard to put down his weapon. After Grisham was tased, Everard complied with the officers, placing his hands behind his back to be handcuffed. (ROA.2363-2364 [time stamp 6:00-6:07]). Ruiz then walked Everard a few steps away from the road and, with one hand on his arm and another on his upper back, helped him onto his knees in a manner that was slow and controlled. (ROA.2363-2364 [time stamp 6:07-6:23]). Then, Chief Valenciano came over and both of them grasped Everard's arms and moved him from his knees to a prone position. (ROA.2363-2364 [time stamp 6:23-6:40]). A review of the video evidence reveals that he was not pushed or shoved forcefully, but rather placed on the ground. (ROA.2363-2364 [time stamp 6:07-6:40]). Moreover, at the time, Everard's hands were handcuffed behind his back, he would not have been able to lay down on his front in a controlled manner without assistance.

Appellees did not tase Everard, but merely moved him from kneeling to a prone position. (ROA.2363-2364 [time stamp 6:23-6:38]). Moreover, Appellees did not employ any force once he was already laying down. Appellees did not

move Everard to subdue him, but merely to effectuate a more thorough search for additional weapons.  (ROA.2363-2364 [time stamp 6:38-7:00-5:00]).

Everard was arrested for disorderly conduct for displaying a weapon in an alarming matter.  As noted above and delineated below, alarmed citizens called 911 to report Everard on the sidewalk with an assault rifle and were in fear of their lives if it could be an active shooter situation.  Everard was also told to get on the ground over 10 times but was uncooperative and displayed verbal resistance to officers' orders and continued to refuse to comply prior to Grisham's tasing. *Cloud* 93 F.3d 379 at 384.

Ruiz and Chief Valenciano did not push, shove, kick, or tase Everard while he was on his knees; video reveals that they kept their hands on his person for the entirety of his descent. (ROA.2363-2364 [time stamp 6:38-6:40]).  Everard has not introduced evidence creating a genuine issue as to whether this method constituted force, much less whether such force was unreasonably excessive under the circumstances. Even if this behavior somehow constituted excessive force, Everard has not pointed to precedent which would clearly establish that it violated the Fourth Amendment. Summary judgment was therefore proper on Everard's excessive force claim.

As applied by the District Court, the Appellees met the *Graham* standards and retain their qualified immunity.

**E.**  **Since probable cause existed for Appellants' arrest, they fail on their Unlawful Arrest Claim.**

Appellants assert that they were unlawfully arrested in violation of the Fourth Amendment. (ROA.34).  The right to be free from warrantless arrest without probable cause is clearly established. See, e.g., *Alexander v. City of Round Rock*, 854 F.3d 298, 306-07 (5th Cir. 2017).  An officer is therefore not entitled to qualified immunity if "'there was no actual probable cause for the arrest' and he was 'objectively unreasonable in believing there was probable cause for the arrest." *Rountree v. Dyson,* 892 F.3d 681, 685 (5th Cir. 2018) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017)). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. Southern Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004), *quoting, Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

Whether there was probable cause requires identification and analysis of the particular crime at issue. Here, Appellants were arrested and eventually charged with interference with the public duties of a police officer, obstructing a passageway or roadway, and resisting arrest; Everard was also charged with disorderly conduct—display of a firearm, and Grisham was charged with assault of a public servant. (ROA.2534-2547).  A sufficient showing of probable cause as to

any of the alleged offenses necessarily undermines any assertion of unlawful arrest. *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 527 (S.D. Tex. 2021, *appeal dismissed sub nom*); *Hunter v. City of Houston, Texas*, No. 21-20632, 2022 WL 1782610 (5th Cir. Mar. 21, 2022). As demonstrated by the facts below, Everard and Grisham posed a safety threat.

### 1. Everard's arrest.

TEX. PENAL CODE § 42.01(a) provides: "A person commits an offense if he intentionally or knowingly displays a firearm or other deadly weapon in a public place in a manner calculated to alarm." TEX. PENAL CODE § 42.01(a)(8). Appellees had probable cause to believe that Everard was committing this offense at the time of his arrest.

Appellees arrived on the scene after receiving calls from citizens that an armed man was standing on a busy street corner. (ROA.2537-2546). Video evidence reveals that the street in question was on a heavily trafficked area, with a gas station on one side and many commercial retailers on the other. (ROA.2363-2364 [time stamp 0:44-1:58]). The area was populated with people both on foot and in cars. (ROA.2363-2364 [time stamp 0:44-1:58]). When Appellee officers arrived at the scene, Everard was present and visibly armed; they instructed Everard to get down the ground over ten times, but Everard refused. (ROA.2363-2364 [time stamp 0:44-1:58]). More than mere refusal, Everard began to yell back

and swear at the officers, while still in possession of his weapon. (ROA.2363-2364 [time stamp 0:44-1:58]). Everard was armed, belligerent, and noncompliant. (ROA.2363-2364 [time stamp 0:44-1:58]).

The facts in *Ex parte Poe*, 491 S.W.3d 348 (Tex. App.—Beaumont 2016, pet ref'd) are substantially similar to those in this case: the defendant was walking through a crowded mall, his place of employment, with a rifle across his back, carrying a bag of food in one hand and a drink in the other. *Id* at 352. He was not pointing his rifle at anyone or anything, and, in fact, did not even have it in his hands; nevertheless, mall patrons and store workers were "horrified" and called 911. *Id.* at 351. When the defendant was approached by police following these calls, he "immediately became belligerent with the officers while espousing his Second Amendment rights," arguing that he was displaying his rifle for the purpose of a Second Amendment protest. *Id.*

The defendant sought *habeas* relief on the grounds that TEX. PENAL CODE § 42.01(a)(8) was constitutionally overbroad and vague. *Ex parte Poe*, 491 S.W.3d at 352. The appeals court held that the statute was not unconstitutional and that, while "there clearly are constitutional rights to bear arms and to express oneself freely, there is no constitutionally protected right to display a firearm in a public place in a manner that is calculated to alarm." *Id*. at 354-55 (emphasis in original). It also held that the terms "manner," calculated," and "alarm," should be given

their commonly known and accepted meanings. *Id.* The Texas Court of Criminal Appeals has held that "a manner calculated to alarm" means a manner that is objectively likely to frighten an ordinary, reasonable person. *State v. Ross,* 573 S.W.3d 817, 824 (Tex. Crim. App. 2019).

In this case, Everard was standing in a crowded public area with his gun in a holster across his chest, which alarmed passersby enough to call 911. (ROA.2363-2364 [time stamp 0:44-1:58]). He was loud and belligerent with Appellee officers when they attempted to ask him questions, have him put down his weapon, and inquire as to whether he was licensed to carry a weapon. (ROA.2363-2364 [time stamp 0:44-1:58]). These facts and circumstances within Appellees' knowledge would have been sufficient for a reasonable person to conclude that Everard was displaying a firearm in a manner calculated to alarm. This reasonable conclusion gave the officers probable cause to arrest. *Haggerty*, 391 F.3d at 655-56.

In any event, the arresting officers are protected by qualified immunity, as Everard can point to no clearly established law that a reasonable officer would not have probable cause to arrest an armed, belligerent, noncompliant person under Tex. Penal Code § 42.01(a)(8) in the circumstances of this case. To the contrary, case law indicates that Texas police officers in nearly identical circumstances have believed there was probable cause to effectuate such arrests, and such decisions have not been struck down by the Texas court. See, e.g., *Ex parte Poe*, 491

S.W.3d at 352.  Therefore, Appellees did not violate Everard's rights under the Fourth Amendment and, even if they had, such violation was not clearly established so as to overcome the immunity defense. Summary judgment was therefore proper on Everard's Fourth Amendment unlawful arrest claim.

### 2.    Grisham's arrest.

TEX. PENAL CODE § 38.15(a) provides that an individual person commits an offense if, with criminal negligence, the individual "interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." *Id.* TEX. PENAL CODE § 38.15(a)(1).  Appellees had probable cause to believe that Plaintiff Grisham had committed this offense.

As discussed above, Appellee officers were attempting to carry out a lawful arrest of Everard for violation TEX. PENAL CODE § 42.01(a)(8); they had reasonable grounds to believe that Grisham was interfering with this arrest. Grisham avers that he was not interfering with Appellees' duties because any potential interference was merely verbal, which is a defense to prosecution. See TEX. PENAL CODE § 38.15(d) (defense to prosecution under this section that interruption, disruption, impediment, or interference alleged consisted of "speech only"). Even if the existence of a "speech only" trial defense is read to negate probable cause to arrest, Grisham's interference here was more than only speech.  He continued to approach

Everard while being instructed not to, and he stood between Viera and Everard. (ROA.2363-2364 [time stamp 5:30-5:40]). These facts and circumstances would lead a reasonable officer to believe that Grisham's interference with Appellees' public duties was more than merely verbal.

Finally, as with Everard, even if there were a genuine dispute as to Grisham's constitutional false-arrest claim, Grisham points to no precedent that would clearly establish that it was unreasonable for Viera to believe that Grisham was interfering with the duties of a peace officer[6].

## F.    **Appellants do not have a Fourteenth Amendment violation claim.**

Appellants assert that Appellees deprived them of their Fourteenth Amendment rights under the United States Constitution. (ROA.22-44). However, it is the Fourth Amendment that provides the standard for evaluation of Appellants' alleged excessive force claim and not the Fourteenth Amendment. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979). When the general due process rights guaranteed by the Fourteenth Amendment are congruous with rights guaranteed by another more explicit right, such as the Fourth Amendment's protection against the excessive use of force in an

---

[6] Appellees also assert a defense under the independent intermediary doctrine. (ROA.820). Under the independent intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Wilson v. Stroman,* 33 F.4th 202, 208 (5th Cir. 2022), *citing, McLin v. Ard,* 866 F.3d 682, 689 (5th Cir. 2017).

arrest, the more explicit right supersedes "the more generalized notion of substantive due process." "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") *Graham* 490 U.S. 386 at 395. Appellants cannot repackage a Fourth Amendment claim as a Fourteenth Amendment due process violation. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 812-13, 127 L. Ed. 2d 114 (1994). Therefore, Appellants have not provided the grounds for a Fourteenth Amendment cause of action that entitles them to any relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As such, Appellants have no conceivable Fourteenth Amendment excessive force claim.

### 1.    No Fourteenth Amendment violation for Failure to Intervene and Failure to Render Medical Attention.

Appellants assert that Appellee officers observed excessive force and other constitutional violations being committed by their counterparts and did nothing to intervene. (ROA.37-38 see ¶¶96-104). But there is no evidence that any one Appellee officer knew what the others would do, and the events unfolded very rapidly. Appellee officers therefore lacked any realistic opportunity to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (holding that

officers can be held liable for failing to intervene only if they had a realistic opportunity to do so).

Appellants' contention that Appellees denied them medical treatment is without merit. In order to be liable for a violation of a detainee's clearly established constitutional right to medical care, the official must have had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk. *Schmidt v. Texas*, No. H-08-cv-01696, 2009 WL 7808953 *7 (S.D. Tex. Aug. 17, 2009), aff'd in part, dismissed in part sub nom. *Schmidt v. Gray*, 399 F. App'x 925 (5th Cir. 2010), *Hare v. City of Corinth, Miss.,* 74 F.3d 633 at 650 (5th Cir. 1996) (en banc).  Chief Valenciano and the other officers testified in their depositions that the area where the incident occurred was not secure, so any emergency vehicle was directed to go to the Olmos Park Police Station, which is located very close to the scene of the incident. (ROA.2334 [time stamp 9:23-9:55], 2252:14-20, 2253:14-17, 2298:21-23).  The time sequence from when Grisham was tased until the time EMS arrived at the police station was approximately nine (9) minutes.  (ROA.2337 [time stamp 5:40-14:50).  The video after the arrest demonstrates that Grisham was not in a state of distress or displayed a serious medical need for medical attention. In fact, he joked that he was Superman when he refused to walk to the patrol car.  (ROA.2334 [time stamp 7:50-8:00], 2337 [time stamp 7:07-7:14]).  In Everard's case, he did not

request medical attention, nor did he appear to be in distress to require immediate medical attention. The videos provide evidence that Appellants cannot demonstrate that Appellee officers had subjective knowledge of a substantial risk of serious harm to Appellants but responded with deliberate indifference.

## G.    There is no Monell liability for the City of Olmos Park

To recover a judgment against a city under Section 1983, a plaintiff must *allege* and establish that he sustained a deprivation of a constitutional or other federally protected rights as a result of some official policy, practice or custom of that governmental entity. *Monell* 436 U.S. 658 at 691-94. Appellants assert in their Complaint that unconstitutional City policy previously deprived open carry activists of their First Amendment rights. (ROA.42 see ¶134).  Appellants also assert that "On multiple occasions, individual Appellee officers and the Olmos Park police department have detained, arrested, or otherwise charged Second Amendment activists for open carry per Texas State Law" (ROA.42 see ¶134).

In order for a municipality to be *liable* for its policies, practices, or customs, Appellants must show "either (1) that a policy *itself* violated federal law or authorized or directed the deprivation of federal rights or (2) that a policy was adopted or maintained by the municipality's policymakers with 'deliberate indifference' as to its known or obvious consequences...a showing of simple or even heightened negligence will not suffice.'"  *Bd. of Cnty Comm'rs of Bryan*

*Cnty., Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  In a § 1983 suit against a city, the claim must be based upon the implementation or execution of a policy or custom which was <u>officially</u> adopted by the City.  *Monell* holds that a governmental entity can be found liable under Section 1983 <u>only</u> if the entity itself causes the constitutional violation at issue.  *Monell,* 436 U.S. at 690-91.  Thus, Appellants must allege with **specificity** and **particularity** that their claims are based on the City's official policy, **not** the policy of an individual official or officer.  *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984).

*Respondeat superior* or vicarious liability cannot be a basis for recovery under Section 1983. *Monell* 436 U.S. at 691  Municipalities "… are liable only for their own acts and not those attributed to them by principles of *respondeat superior." Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (footnote omitted).

Appellants' claims must be dismissed because their claims are erroneously premised on *respondeat superior* liability.  Appellants assert that Ordinance 24-84 was unlawful as it conflicted with Texas law permitting the open carry of firearms, which was the unlawful policy of the moving force behind Plaintiffs' injuries. (ROA.43 see ¶139).  Appellants further assert that **<u>if</u>** Ordinance 24-84 was not unlawful, it was officially adopted policy of the City which had plain and obvious consequences resulting in a constitutional violation. (ROA.43 see ¶141).  However,

Appellants have not provided any evidence that the City was enforcing Ordinance 24-84 with deliberate indifference when it was superseded by state law and that the City adopted the now archaic law as its policy. Appellants do not cite any specific instances where Ordinance 24-84 was enforced against them prior to March 27, 2018. Appellants cannot assert vicarious constitutional claims on behalf of any other "Second Amendment activists." "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The Fifth Circuit has emphasized that without all of the requisite elements for a *Monell* claim to establish liability, "where a court fails to adhere to the rigorous requirements of culpability (by policymakers) and causation, municipal liability collapses into *respondeat superior* liability". *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998), *quoting, Brown,* 520 U.S. 397 at 415 (reference to policymakers added). As such, Appellants do not have a cause of action against the City of Olmos Park.

**Issue No. 2: Appellants' issues are based on the same facts that were considered by the District Court in granting Appellees' Motion for Summary Judgment and in denying Appellants' Motion for Partial Summary Judgment.**

**A.    Appellants' First Amendment claims are too conclusory to withstand Summary Judgment.**

**1.    Appellants cannot show First Amendment violations.**

Appellees agree with the trial court's holding that Appellee Officers had

probable cause to arrest Grisham and Everard. (ROA.1130-1159, 1350-1351). Appellants assert that they were unlawfully arrested for the protected conduct of being present on a public sidewalk in Texas while open carrying a firearm and while recording police officers. (ROA.35 see ¶¶ 69, 70, 902). Appellants claim they were unlawfully retaliated against. The trial court was correct that Appellants' First Amendment claims are little more than general statements that the police violated their rights. (ROA.1152). The trial court, citing *Freeman v. Tex. Dep't of Crim. J.*, 369 F.3d 854, 860 (5th Cir. 2004), determined that Appellants may not rely on "conclusory allegations" or "unsubstantiated assertions" to create a genuine issue of fact.

The trial court provided the following Appellants' quote as an example of their generalized allegations against Appellee police officers: "The Defendants simply chose to not allow Plaintiffs to express their views because of the messages they vocalized". [*Id*] (ROA.850). To remedy their unpersuasive arguments, Appellants for the first time on appeal contend that they were engaged in First Amendment protected Symbolic and Political Speech.

### 2.    Symbolic and Political Speech

Everard now asserts that he modified a 22-caliber rifle to look like an assault rifle slung across his front chest while standing at the busy street corner in Olmos Park intended to "convey a particular message." He also argues the "likelihood was

great that the message would be understood by those who viewed it". [Appellants' Brief, Dkt. 48-1, pg. 80]. Appellants cite to *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) and *Spence v. Washington* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). These cases are distinguishable from the instant case and do not support Appellants' proposition that Everard's display of his altered assault rifle is protected symbolic speech under the First Amendment. *Virginia* involved conduct of cross burning and *Spence* involved a peace symbol on an American flag. One is a symbol of terror and the other a symbol of the nation. *Virginia* 538 U.S. at 343; *Spence* 418 U.S. at 411. However, gun possession itself is not speech and "there is no colorable claim under the First Amendment". *Wortman v. United States* No. 5:14-cv-04567-PSG, 2015 WL 2251168 *4 (N.D. Cal, 2015), *citing*, *Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003) (typically a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it.). Appellants' Brief is replete that they along with open-carry activists were at the City of Olmos Park to protest the ordinance. However, as cited above, in the March 26, 2018, telephone conference Chief Valenciano informed Grisham that it would be legal to open carry a long gun in public and a handgun with a valid license *as long as the person was not breaking any other laws*. (ROA.2260 [time stamp 1:44-2:00, 3:30-3:37, 5:35-5:47, 2291:2-22, 2296:6-13]). Also as cited

above, armed with this knowledge Grisham orchestrated the March 27, 2018, incident knowing that the city was not enforcing its ordinance the prohibition of carrying rifles or licensed handguns, thereby losing any alleged symbolic speech by carrying a rifle or handgun.  To complete the Appellants' quote in *Spence*, "(w)e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea'" *Spence* 418 U.S. at 409 (Appellants' Brief pg. 77, fn 370).

Appellees now contend that their actions involved their unlawful arrest for their expression of political speech that was infringed upon by Appellees. However, their basis for their protected conduct is the standing on public sidewalks while open carrying firearms while recording police officers on a public sidewalk. As mentioned above, Chief Valenciano notified Grisham a day prior to the March 27, 2018, incident that the City was not enforcing its open carry ban.  It is undisputed that Grisham and Everard were not arrested for open carrying firearms or filming police officers[7]. There was no unlawful prevention of protected conduct, so Appellants have no basis for a First Amendment violation. As such, Appellants rely on general conclusory statements that the police violated their rights.

---

[7] As referenced in the R&R, at no time did Appellee officers order Appellants to stop filming. (ROA.1153, 2363 [time stamp 0:00-7:00]).

### 3.     There were no retaliatory actions against Appellants for engaging in protected Speech under the First Amendment

The District Court found that since there was probable cause to arrest Appellants, they did not have a cause of action for retaliatory action against Appellees for unlawful arrest for exercising their protected rights under the First Amendment.[8] (ROA. 1130-1159, 1265-1266).  However, Appellants, now for the first time on appeal, are asserting that they were exercising their First Amendment right to condemn police conduct [Appellants' Brief pg.63].  Appellants are now asserting the probable cause exception cited in *Nieves v. Bartlett*, 204 L.Ed.2d 1, 139 S. Ct. 1715, 1727 (2019), "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so". *Id*.  The *Nieves* Court determined that this exception applies when, ". . . we conclude that the no-probable-cause requirement should not apply when a plaintiff presents ***objective evidence*** that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been". *Nieves* 139 S. Ct. 1715 at 1727 (Emphasis added). The Fifth Circuit in *Gonzalez v. Trevino,* 42 F.4th 487 (5th Cir. 2022) has interpreted *Nieves* as follows: "The Court's language was careful and explicit: it required 'objective

---

[8] " . . . however, a retaliatory criminal prosecution "in violation of the First Amendment [is] actionable only if a plaintiff can also prove . . . absence of probable cause to prosecute." *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002).

evidence' of 'otherwise similarly situated individuals' who engaged in the same criminal conduct but were not arrested". *Id* at 493, citing *Nieves* 139 S. Ct. 1715 at 1727. The Fifth Circuit read the *Nieves* majority opinion as requiring that a plaintiff produce some "***comparative-based***" evidence. *Id.* (Emphasis added). Appellants fail to present objective comparative evidence that other similarly situated individuals who interfered with the duties of a police officer, assaulted a public servant, resisted arrest, or committed disorderly conduct in displaying a gun in an alarming manner were not arrested or prosecuted under Texas law. The *Nieves* exception requires evidence that Appellants have not provided. Therefore, Appellants claims fail because probable cause existed in their arrests.

Appellants for the first time on appeal, assert that the City ratified Chief Valenciano's actions. Appellants attempt to apply the *Nieves* exception to the City and asserts, "Here, the City of Olmos Park ratified and embraced Chief Valenciano's policy to 'Squash the Rebel' by failing to curtail his First Amendment ***retaliatory*** actions against activists protesting the City's open-carry polices". (Emphasis added) [Appellants' Brief 48-1, pg. 79]. Appellants cite *Lozman v. City of Riviera Beach, Fla*., 201 L.Ed.2d 342, 138 S.Ct. 1945, 1953-1954 (2018). In *Lozman*, the Supreme Court held that probable cause would not bar a retaliatory arrest claim against a municipality that created and enforced an official policy motivated by retaliation.". *Lozman* 138 S.Ct. 1945 at 1954.

However, Appellants fail to provide evidence of the City's official policy of retaliation against them. Instead, Appellants assert the City allegedly ratified Chief Valenciano's policy by failing to curtail his alleged retaliatory actions against activists protesting the City's open-carry policies. [Appellants' Brief 48-1, pg. 82]. Appellants' Complaint only contains one sentence that the City Council of Olmos Park is the final policy maker for the City. [ROA 22-50915.43] There is no allegations or conclusory allegations that Chief Valenciano is a final policy maker.

Appellants also assert that the City had no system in place to preserve for future review or investigate complaints made against Chief Valenciano or the police force, and, as a result, the City and its Council members were deliberately indifferent to Chief Valenciano's policy. [Appellants' Brief, 48-1, pg. 82]. However, a municipality's failure to discipline is not adequate to establish ratification. *Piotrowski v. City of Hous*., 237 F.3d 567, 582 (5th Cir. 2001). Therefore, Appellants additional claim of ratification has no merit.

The Fifth Circuit precedent clearly establishes that arrest or indictment in retaliation for protected speech violates the First Amendment. *Keenan v. Tejeda*, 290 F.3d 252 260 (5th Cir. 2002) (retaliatory criminal prosecutions may constitute actionable First Amendment violation); *cf., Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) (false accusations and attempts to prosecute city councilor were not retaliatory because they did not result in arrest or indictment). Such a retaliation

claim requires that (1) the plaintiffs were engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated by the plaintiffs' exercise of constitutionally protected conduct. *Keenan,* 290 F.3d at 258.

Appellants were partially engaged in protected conduct; however, a retaliatory criminal prosecution "in violation of the First Amendment [is] actionable only if a plaintiff can also prove . . . absence of probable cause to prosecute." *Keenan*, 290 F.3d at 260. As discussed above, Appellees did have probable cause to arrest the Appellants. Moreover, Appellants cannot point to evidence creating a fact issue that their choice to film the officers was motivation for their arrest and prosecution; at no time did Appellee officers order Everard or Grisham to stop filming their activities or otherwise interfere with other members of the protest attempting to film their activities. (ROA.2363 [time stamp 0:00-7:00]).    Therefore, summary judgment was proper on Appellants' First Amendment retaliation claims.

**B.**     **Appellee officers' conduct did not violate Clearly Established Law.**

**1.**     **Appellants cannot identify a case that puts Appellees on notice that their specific conduct was a violation of clearly established law.**

Appellees' Motion for Summary Judgment contends that Appellants have not identified a case that put Appellees on notice that their specific conduct was unlawful thereby violating a clearly established law. (ROA.1057 see ¶13). Appellants merely recite doctrine that persons have a right to be present on public sidewalks while open carrying a firearm in Texas while having a clearly established constitutional right to film police officers. (ROA.898-902). Appellants make no attempt to show the "clearly established" law at an appropriate level of specificity required to overcome the Individual Appellee officers' qualified immunity. Appellants rely instead on the broadest proposition of law.

Appellants have not identified a Fifth Circuit case that put the Appellees on notice that their specific conduct violated clearly established law or cite to a Supreme Court case that addresses facts like the ones at issue in this case resulting in the waiver of Appellees' immunity defenses. "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 888 (N.D. Tex. 2018), *citing, Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018), *quoting, Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016). "A

plaintiff fails to meet his or her burden of 'showing specific law on point' when he or she does not cite 'a pre-existing or precedential case' from either the Fifth Circuit [of][9] Supreme Court that places an officer on notice that his conduct in question violates the Constitution. *Id.* (affirming district court's grant of summary judgment in officer's favor in excessive force case because plaintiff "cited nary a pre-existing or precedential case," as this "dooms his case here.")". *Mohamed* 300 F.Supp.3d at 888.

Appellants do not refer to any specific cases that overcome the officers' qualified immunity when a plaintiff (1) does not obey police orders; (2) interferes with police duties; openly displays an assault style weapon in front of his chest[10] (at ready position); (3) is a large man wearing dark colored clothing; (4) outwardly displaying combative and confrontational language (in the instant case, "Front Toward Enemy"[11]) on a hat, notifying anyone who approaches plaintiff can be perceived as the enemy; and (5) wears body armor, inferring the expectation of a confrontation. Further, Appellees contend there is no case that states police officers do not have a mandatory obligation to investigate citizen calls that alarming if not threatening behavior by an unknown individual carrying an apparent weapon of mass destruction is not alarming under section § 42.01

---

[9] Sic.

[10] "[A]lthough there clearly [is a] constitutional right [] to bear arms ... there is constitutionally protected right to display a firearm in a public place in a manner that is calculated to alarm.*" Ex parte Poe*, 491 S.W.3d 348, 355 (Tex. App.—Beaumont 2016, pet. ref d).

[11] Everard's hat, "FRONT TOWARD ENEMY," (ROA.2331).

"Disorderly Conduct" of the Penal Code. Appellants' assertion that law enforcement officers have the discretion to ignore a 911 call has no legal basis. (ROA.2247:13-21).

In addition, Appellants cannot refer to any specific cases that overcome Appellees' immunities when (6) citizens call police raising alarm because a man with an assault rifle is on a public sidewalk; (7) police officer's engage in an investigation, when a 911 call is received; (8) third-party participants organized by plaintiff suddenly disembark from nearby vehicles to video tape the scene and flank police officers;[12] (9) police officer deploys a Taser at a plaintiff to stop an assault against another police officer and to stop plaintiff from struggling to avoid arrest for violation of TEX. PENAL CODE § 38.15, for interference with verification of handgun license TEX. GOV'T CODE § 441.205 and for interference with the ability of peace officer to disarm, TEX. GOV'T CODE § 411.207; and (10) when plaintiff is arrested for violation of the TEX. PENAL CODE § 42.01 "Disorderly Conduct."

As referenced by both parties, case law does not require a case directly on point for a right to be clearly established; however, existing precedent must place

---

[12] Chief Valenciano observed armed and unarmed auditors flanking the officers while Grisham was continuing to struggle with Officer Viera. Chief Valenciano proceeded to put an end to the threat of flanking auditors and Grisham's struggling with Officer Viera. Chief Valenciano determined that the totality of the circumstances required an immediate end to an alarming situation that was escalating and tased Grisham. (ROA.2334 [time stamp 6:34-7:05], 2440:1-25, 2441:1, 2441:19-25, 2442:1-15, 2443:5-10, 2444:23-25, 2445:1-6).

the statutory or constitutional question beyond debate. *Rivas-Villegas v. Cortesluna*, No. 20.1539, 2021 WL 4822662, *2 (2021), *citing*, *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017). (ROA.814-815 see ¶23, 898 see FN 97). Appellants have not cited a case either directly on point or a case that has placed the constitutional questions in this case beyond doubt. The Supreme Court's holdings in *Cortesluna* together with the difficulty for an officer to determine how the relevant legal doctrine, in this case, excessive force, will apply to the factual situation the officer confronts, cannot establish that Appellees violated a clearly established law. *Mullenix* 577 U.S. 7 at 12. "As we have explained, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *District of Columbia v. Wesby*, 583 U. S. ——, ————— – ————, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)." Therefore, Appellees retain their immunity.

### 2.    The holding in *Nieves v. Bartlett* was not clearly established law prior to or at the time of Appellants' arrest on March 27, 2018.

The Supreme Court's narrow exception in *Nieves* to the general rule that a plaintiff cannot bring a retaliation claim if the police had probable cause to arrest, was decided on May 28, 2019. Approximately one year and four months after Appellants' arrest. As such, Appellants cannot meet their burden on the second inquiry to show that Appellee officers' actions violated Appellants' clearly

established law. Appellee officers therefore maintain their qualified immunity. *Rivas-Villegas* at *2

### 3. Appellants mischaracterize their Statement of Facts

Appellants attempt to provide justification for their voluntary acts by commencing with a sequence of events, beginning before the date of the March 27, 2018, incident, occurring on February 5, 6-9, 10, 16, 20, 21; and March 1, 5, 16, 17, 19, 23, 26, 2018 involving arrests of individuals not parties to the instant suit. Appellants then recite their version of the facts hour by hour that took place on the date of the March 27, 2018. Appellants' version of the incident contradicts their and Appellees alleged actions which are clearly visible in the body cams, dash cams, auditor videos, and auditor audio recordings. Appellants cherry picked sections of the depositions of Appellee officers Lopez, Viera, Ruiz, and Chief Valenciano (ROA.829-839) and select deposition testimony they wish to embellish to fit into the Appellants' narrative of what transpired on March 27, 2018.

Appellants attempt to create a story of conspiracy by embellishing extraneous and dissimilar facts to buttress the insubstantial evidence that is the basis of Appellants' claims. Appellants only provide circumstantial evidence that alleged acts of preparation by Chief Valenciano fit into Appellants' timeline. (ROA.1087). However, Appellants strategically avoid the actual evidence in

Appellees' Motion for Summary Judgment that Grisham planned the encounter with the police. (ROA.806 see ¶8).

Appellants are not asserting conspiracy claims against Appellees, nor any type of discrimination, as the basis of their constitutional violation claims. (ROA.22-44). Appellants misrepresent that on March 5, 2018, Chief Valenciano directed the dissemination of his PowerPoint presentation to local, state, and federal law enforcement officials, referencing an email (ROA.317-318, 886) to fit into the Appellants' narrative. However, the email reflects that the Alamo Area Police Chief Association ("AAPCA") forwarded the email to named recipients. Nowhere in the email does it indicate that Chief Valenciano directed the dissemination of his PowerPoint presentation to others. Appellants misrepresent that on March 17, 2018, Alamo Heights dispatch was notified of potential Second Amendment demonstrations in Olmos Park in the "near future". (ROA.887). The email (ROA.577) did not reference a potential demonstration in the "near future," but indicated that a demonstration was specifically planned for Monday, March 19, 2018, at approximately 8:00 a.m. There is no evidence that an alleged demonstration occurred in the City of Olmos Park on March 19, 2018. Appellants emphatically contend, with no basis in fact, that the City or Chief Valenciano were supposed to extrapolate from this email that a Second Amendment demonstration was to occur sometime on March 27, 2018. In addition, Appellants utilize a March

19, 2018, email (anticipated date of the demonstration) regarding "protesters flooding the area" as an open-ended warning to the City or Chief Valenciano that a protest was in the "near future". In addition, Appellants contend that the Alamo Heights dispatch was notified of "Second Amendment Demonstrations" in Olmos Park in the "near future". (ROA.887, 646). The March 19, 2018, email Appellants reference was time stamped 10:01 a.m. from Alamo Heights Chief of Police, Richard Pruitt, with a plea indicating that Alamo Heights' dispatch was receiving multiple calls from "Second Amendment folks" that were impairing his city's ability to timely answer legitimate emergency services calls. (ROA.547-655). Appellants desperately resort to word smithing by indicating that the City of Olmos Park "[was] not answering calls when Alamo Heights attempted to transfer calls..." inferring that the City of Olmos Park was intentionally not answering calls from Second Amendment protesters. Appellants do not reference what Chief Pruitt indicated in the email, i.e., that the Olmos Park City Hall told him that the city could not get anyone to answer the phones.   Appellants quote several sections in the "Olmos Park Police Update Alert" sent by the City's City Manager, Celia De Leon, to Marian Vargas Mendoza, Assistant to the Alamo Heights City Manager (also Information Services Manager) on March 23, 2018. (ROA.887).  One section of the Update is called "Police Weekly" and concerned a "group of individuals alleging to be gun activists. . ." that was prepared by Chief Valenciano. Appellants

correctly quote the first paragraph of this section's Update. (ROA.887, 562-563, 576-577, 612, 646). Appellants leave out the following additional sentences in this section, "They [gun activist groups] have communicated they intend to continue to protest, but to date no Special Activity Permit for any type of protest/march has been requested and/or approved". (ROA.562). Chief Valenciano ends this portion of the Update as follows: "The City's main priority is your safety, and our department is working with different law enforcement agencies to achieve a safe and peaceful resolution to this situation". (ROA.563).

Appellants' reference to the March 26, 2018, telephone call between Chief Valenciano and Grisham is discussed in Appellees' Motion for Summary Judgment (ROA.806 see ¶¶7-8). Appellees contend that Grisham did not provide Chief Valenciano with notice of Grisham's appearance or a protest to occur the next day on March 27, 2018. The audio tape provided to the court as summary judgment evidence speaks for itself. (ROA.2260). Appellants' interpretation of the facts in this case which forms the basis of Appellants causes of action are derived from Appellants' own pleadings and exhibits.

Appellants fixate on their belief that Appellees should have obviously known that Appellants Grisham and Everard were "peaceful" and "nonviolent" protestors. However as stated in Appellees' Motion for Summary Judgment: "[c]ontrary to [Appellants'] claim that Grisham is a 'peaceful protester' (ROA.222

see ¶1), Grisham's own YouTube broadcasts provide an insight to his intentions and propensity for a violent confrontation." (ROA.826 see ¶48).  Everard created alarm to the public in the Olmos Park community for the purpose of staging and filming an encounter with the police. *Id*. It is ironic that Appellants seek Appellees' and the community's trust, however, Appellants' antics are in opposite to earn the trust of police officers and the community at large.

## CONCLUSION AND PRAYER

Appellees aver the entitlement to qualified immunity by the individual officers and the City's immunity from Appellants' claims under *Monell*. Appellees therefore pray this Honorable Court affirm the Trial Court's dismissal of Appellants' claims in their entirety.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:   (210) 227-3243
Facsimile:   (210) 225-4481
pbernal@rampagelaw.com
aruiz@rampagelaw.com

By:    _____*/s/ Patrick C. Bernal*_____
PATRICK C. BERNAL
State Bar No. 02208750
ADOLFO RUIZ
State Bar No. 17385600

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been served via the Court's CM/ECF Document Filing System, https://ect.ca5.uscourts.gov/, upon the following registered CM/ECF users.

Brandon J. Grable
Grable Grimshaw PLLC
1603 Babcock Road, Suite 280,
San Antonio, TX 78229
*Counsel for Appellants*

_____/s/ Patrick C. Bernal_____
PATRICK C. BERNAL

## **CERTIFICATE OF COMPLIANCE**

1.     This motion complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because this Brief contains 12,217 words, excluding the parts of the Brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a monospaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2205 Build 16.0.15225.20278) 64-bit with 14-point, Times New Roman type face (with 12-point type face in the footnotes).

_____/s/ Patrick C. Bernal_____
PATRICK C. BERNAL