# No. 22-50915

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CHRISTOPHER GRISHAM; JAMES EVERARD,
*Plaintiffs - Appellants*

v.

RENE VALENCIANO, OLMOS PARK CHIEF-OF-POLICE; J. LOPEZ,
OFFICER; HECTOR RUIZ, OFFICER; A. VIERA, OFFICER;
CITY OF OLMOS PARK,
*Defendants - Appellees*

---

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
5:20-CV-387

## MOTION FOR REHEARING ON EN BANC

*Counsel listed on Inside Cover*

**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@g2.law
**Grable Grimshaw, P.L.L.C.**
1603 Babcock Road Suite 280
San Antonio, TX 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**ATTORNEY FOR
PLAINTIFFS-APPELLANTS**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| City of Olmos Park | Patrick Bernal of Denton, Navarro, Rocha, Bernal & Zech, P.C. San Antonio, TX |
| J. Lopez | Patrick Bernal of Denton, Navarro, Rocha, Bernal & Zech, P.C. San Antonio, TX |
| Hector Ruiz | Patrick Bernal of Denton, Navarro, Rocha, Bernal & Zech, P.C. San Antonio, TX |
| Rene Valenciano | Patrick Bernal of Denton, Navarro, Rocha, Bernal & Zech, P.C. San Antonio, TX |
| A. Viera | Patrick Bernal of Denton, Navarro, Rocha, Bernal & Zech, P.C. San Antonio, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| James Everard | Brandon Grable of Grable Grimshaw, P.L.L.C. San Antonio, TX |
| Christopher Grisham | Brandon Grable of Grable Grimshaw, P.L.L.C. San Antonio, TX |

/s/ Brandon J. Grable
BRANDON J. GRABLE
Attorney of Record for Plaintiffs-Appellants
Date: March 11, 2024

i

## STATEMENT PURSUANT TO F.R.A.P. 35(b)(1)

The February 26, 2024, panel decision in this case—specifically concerning the totality of circumstances analysis—conflicts with the United States Supreme Court standard in *United States v. Cortez*, 449 U.S. 411 (1981) and its progeny, as well as *Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988), and its progeny, because the panel's opinion omits and disregards knowledge known to the officers leading up to the interaction with Appellants which impacts the totality of circumstances and probable cause evaluation as to whether they knew that Appellants were engaged in lawful protest.

# TABLE OF CONTENTS

**Contents**                                                ***Page***

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT PURSUANT TO F.R.A.P. 35(b)(1) ................................................ ii

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES .................................................................................. iv

I.  STATEMENT OF THE ISSUES MERITING EN BANC
    CONSIDERATION ........................................................................................ 1

II. STATEMENT OF THE COURSE OF PROCEEDINGS AND
    DISPOSITION OF THE CASE ...................................................................... 2

III. STATEMENT OF FACTS NECESSARY TO ARGUMENT ....................... 6

IV. ARGUMENT AND AUTHORITIES ............................................................ 8

CONCLUSION & PRAYER ................................................................................. 15

CERTIFICATE OF SERVICE ............................................................................. 17

# TABLE OF AUTHORITIES

*Pages(s)*

**Cases**

*Bailey v. Iles*,
   87 F.4th 275, 285-86 (5th Cir. 2023) ....................................................9

*Bigford v. Taylor*,
   834 F.2d 1213, 1218 (5th Cir. 1988) ....................................................9

*Ex parte Poe*,
   491 S.W.3d 348 (Tex. App.—Beaumont 2016) ....................................8

*Illinois v. Andreas*,
   463 U.S. 765 (1983) ............................................................................13

*Lovett v. State*,
   523 S.W.3d 342 (Tex. App.—Ft. Worth, 2017) ....................................8

*Nieves v. Bartlett*,
   139 S.Ct. 1717 (2019). ........................................................................14

*United States v. Castro*,
   166 F.3d 728, 733 (5th Cir. 1999) ................................................9, 10

*United States v. Ibarra*,
   493 F.3d 526 (5th Cir. 2007) ..............................................................14

*United States v. Powell*,
   732 F.3d 361 (5th Cir. 2013) ..............................................................14

# I.     STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION

1.     Whether the panel decision rendered in this case on February 26, 2024, failed to view the evidence at summary judgment in the light most favorable to Christopher Grisham and James Everard.

2.     Whether the panel decision improperly disregarded information available to the Appellee officers in adopting the district court's totality of circumstances analysis.

1

## II.   STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

On March 27, 2018, in Olmos Park, Texas, Appellants Christopher Grisham and James Everard, with others, peacefully protested on a public sidewalk where recent protests had occurred.[1]   The Appellants were protesting the local government's handling of lawfully armed individuals under an outdated ordinance that was inconsistent with Texas law.[2]   Chief Valenciano knew of the planned protest; knew of Grisham, the president and founder of the activist group Open Carry Texas; and had reported what he knew throughout Olmos Park and the surrounding cities, including Alamo Heights, which handles 9-1-1 calls for Olmos Park.[3]

During the uneventful protest, a passerby called 9-1-1 to simply report that Everard had a rifle around his neck, he appeared to be making a statement, and it looked "awkward."[4]   The Alamo Heights 9-1-1 dispatcher immediately acknowledged that it was the "Second Amendment people" and passed the

---

[1] ROA.830-831.

[2] ROA.3501.

[3] ROA.2386, 3268.

[4] ROA.2354 (Exhibit E, audio (0:03-1:40)).

information to Olmos Park.[5]  There was no alarm from either the caller or the dispatcher.[6]  As with other recent peaceful armed protests at that exact location, the Appellee Officers, including Chief Valenciano, went out there to "squash[] the rebel."[7]  Grisham was tasered and arrested, and Everard was arrested and shoved to the ground which caused injury.[8]  No other protesters were arrested or assaulted.[9]

On March 26, 2020, Plaintiffs-Appellants sued the City of Olmos Park, former police chief Rene Valenciano, and its officers (Ruiz, Lopez, and Viera) under 42 U.S.C. § 1983, alleging violations of Appellants' First Amendment and Fourth Amendment rights to be free from retaliation, unlawful seizure, and excessive force under an official city policy of "Squash the Rebel."[10]

---

[5] ROA.2356 (Exhibit F, audio (0:57-1:08)).

[6] ROA.2356.

[7] ROA.2384 (Exhibit S, video (12:18-12:22)), 2370 (Exhibit L, video (11:31-11:35)), 2372 (Exhibit M, video (11:31-11:35)).

[8] ROA.2372 (Exhibit M, video (3:49-4:51)).

[9] ROA.2372 (Exhibit M, video (8:41-10:45)) shows that an observer was arrested for an outstanding warrant.  She was not armed and was never charged with anything related to the protest.

[10] ROA.22-44.

On November 8, 2021, Appellees/Defendants filed a motion for summary judgment asserting, among other things, qualified immunity.[11]  Plaintiffs/Appellants also filed a motion for summary judgment.[12]  Plaintiffs/Appellants timely filed a response to Appellee/Defendants' motion.[13]  Appellee/Defendants did not file any response to Plaintiffs/Appellants' motion.[14]

On July 22, 2022, the magistrate issued a Report and Recommendation recommending that Appellees/Defendants' motion be granted and Plaintiffs/Appellants' motion be denied.[15]  On August 5, 2022, Plaintiffs/Appellants filed an objection.[16]  On September 20, 2022, the district court adopted the magistrate's report.  Final judgment was issued on September 20, 2022.[17]

---

[11] ROA.804-828.

[12] ROA.829-852.

[13] ROA.884-922.

[14] ROA.14-20.

[15] ROA.1130-1159.

[16] ROA.1216-1254.

[17] ROA.1265-1267.

Grisham and Everard appealed, asserting that the facts were viewed too narrowly and were not construed in their favor.[18]  On February 26, 2024, a panel of this Court rendered a decision that essentially adopted the facts construed narrowly and in favor of the movants.[19]  First, the panel only considered the video footage from March 27, 2018, and did not consider the knowledge available to the officers following the events and investigations leading up to March 27, 2018.[20]  The panel also concluded that Everard engaged in disorderly conduct by having a rifle strapped tightly around his chest while holding a camera and engaging in conversation with officers about the unconstitutionality of the since-repealed ordinance that was inconsistent with state law.[21]  The panel reached this result by concluding that when someone calls 9-1-1, they must be alarmed.[22]  The panel also concluded that Everard and Grisham were engaged in disorderly conduct because they were noncompliant with officer *requests*.[23]

---

[18] Doc. 54-2.

[19] Doc. 87-1.

[20] Doc. 87-1.

[21] ROA.1139.

[22] ROA.1140.

[23] ROA.1140, 3662.

# III.  STATEMENT OF FACTS NECESSARY TO ARGUMENT

- Between February 5 and 10, 2018, Appellees frequently seized open-carry activists at the 4300 block of McCullough Avenue in Olmos Park for protesting a since-repealed ordinance that banned the open carrying of firearms, which was inconsistent with Texas law.[24]

- February 13, 2018, Chief Valenciano learned of Open Carry Texas, and that it was their "mission" to "educate Texans on gun rights."[25]

- On February 16, 2018, Chief Valenciano created and disseminated a PowerPoint declaring open-carry activists as criminals.[26]

- February 20-21, 2018, Appellees continued seizing open-carry protestors.[27]

- March 1-5, 2018, Chief Valenciano continued distributing his PowerPoint on open-carry activists.[28]

- March 16, 2018, another activist with a holstered replica gun was arrested

---

[24] ROA.830.

[25] ROA.2469.

[26] ROA.1941-1943.

[27] ROA.831.

[28] ROA.3268, 316-318.

(by Lopez) while holding a sign that was critical of Chief Valenciano.[29]

- March 17, 2018, Grisham sent in open records requests to Olmos Park concerning its policy on arresting individuals that lawfully open carry firearms.[30]  The City responded that no policy existed and then shared information with Alamo Heights that the protests were likely to continue.[31]

- March 19-22, 2018, Chief Valenciano continued collecting and distributing information concerning Open Carry Texas protests.[32]

- March 23, 2018, Olmos Park's City Manager sent an "Alert" acknowledging that "gun activists" were recently detained and arrested, but also recognizing that "Texas is an 'Open Carry' state which authorizes persons to openly-carry[.]"[33]

- On March 26, 2018, Grisham called Valenciano to question whether he would be seized if he open-carried at Olmos Park.[34]  Chief Valenciano

---

[29] ROA.2340-2343.

[30] ROA.3305-3306.

[31] ROA.576-577.

[32] ROA.612, 646, 2846-2491.

[33] ROA.563.

[34] ROA.792-798, 2395-2401, 2382.

repeatedly responded in the negative.[35]  He then shared his insights on the call with city employees and others.[36]

## IV.   ARGUMENT AND AUTHORITIES

Is it disorderly conduct to engage in a peaceful Second Amendment protest that law enforcement knew was occurring simply because someone calls 9-1-1 to report generally that a protester was lawfully displaying a firearm?  The panel decision on February 26, 2024, disregarded an extensive summary judgment record to conclude that it was.

In Texas, "the mere presence of a firearm or deadly weapon in public cannot possibly supply the requisite *mens rea*" for disorderly conduct; otherwise, "anyone participating in Texas's embrace of lawful open carry would be guilty the moment he stepped outside his home visibly armed."  *Lovett v. State*, 523 S.W.3d 342, 348 (Tex. App.—Ft. Worth, 2017, pet. ref'd).  In short, Grisham and Everard did nothing that would qualify as "calculated" to cause "fear or terror resulting from a sudden sense of danger." *Id.* at 349 (quoting *Ex parte Poe*, 491 S.W.3d 348, 354 (Tex. App.—Beaumont 2016, pet. ref'd)).

---

[35] ROA.792-798, 2395-2401, 2382.

[36] ROA.3787-3788.

The panel here disagreed since a passerby happened to call 9-1-1 to report generally about Everard with a gun. However, given the "whole picture," the Appellees *knew* that no crime had occurred when they arrived to stop the protest and "squash the rebel" on March 27, 2022. However, the panel disregarded this knowledge and information and only considered the video of one incident rather than the several weeks of collective knowledge gained by these officers through their several interactions with protestors peacefully challenging an unconstitutional ordinance.

This Court expertly explained in *Bailey v. Iles*, 87 F.4th 275, 285-86 (5th Cir. 2023) the following:

> "It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc). "Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (quotation marks and citation omitted). "As a corollary, moreover, of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not

disregard facts tending to dissipate probable cause." *Id.* (internal citation omitted). "[T]he ultimate determination of whether there is probable cause for the arrest is a question of law we review *de novo*." *Castro*, 166 F.3d at 733.

The panel concluded that the totality of circumstances provided the officers with a "reasonable inference that probable cause existed" for disorderly conduct.[37] The "relevant" facts, as described by the panel, were that someone called 9-1-1 because it was awkward that a man with a gun strapped around him was making a statement, and when the officers arrived, Everard was "displaying his assault-like rifle[38] and standing prominently in the center of a very busy pedestrian[39] and vehicle

---

[37] ROA.1139.

[38] In-operable 22LR rifle. Appellants are not sure what meaning the panel assigns "assault-style rifle."

[39] There were protestors and observers. No one was obstructed or hiding in fear. Everyone seemed to criticize the police response rather than any protestors. ROA.2364 (Exhibit I, video (0:00-5:20)).

traffic area."[40]  Everard was also "openly and verbally uncooperative . . . challenging their commands and refusing to comply with their orders."[41]

There was no mention whatsoever that the officers had first-hand and collective knowledge of events leading up to March 27, 2022, that provided them with a "whole picture" that would have led them to immediately recognize and understand that another open carry protest was taking place.  It was so obvious that even the 9-1-1 operator, who had similar (and probably less) information, immediately knew that it was a protest and was not worried.

The panel gave no consideration to the following:

- Appellees *admitted and acknowledged* before the incident that Texas

---

[40] ROA.1144.

[41] It is undisputed that the officers were making "requests." Everard was not uncooperative. As he asked if they identified the crime he was committing, he said he would stop his peaceful protest and get on the ground.  ROA.2366 (Exhibit J, video (2:25-2:29)).  The officers admitted they did not know what crime he committed.  ROA.3314-3315 (22:11-15, 29:3-13); ROA.3455 (26:22-27:8); ROA.3475-3476 (109:12-112:8).  What they knew was open carry protests were in violation of the City's Squash the Rebel policy.

was an open-carry state[42]

- When Lopez arrived, as he had done at prior protests when he followed the City's 'squash the rebel' policy, he pulled his gun and ordered Everard to the ground.[43] He immediately saw Everard holding a camera with a tightly-strapped rifle to his chest and, without moving or touching the rifle, communicated requests with Everard.[44] Everard declared he was not there to cause any harm to anyone and wanted to know what he did wrong.[45]

- Valenciano and his Officers knew Everard and Grisham were open-carry activists engaged in First Amendment protected symbolic and political speech protesting the Ordinance because (i) the March 27, 2018, gathering followed recent protests in the 4300 block of McCullough Avenue which familiarized Valenciano and his Officers with ongoing opposition to the City's open-carry policies; (ii) Grisham specifically informed Valenciano on March 26, 2018, that he planned

---

[42] ROA.2396-2400.

[43] ROA.3455 (27:1-12 – 28:20-22).

[44] ROA.2370 (Exhibit L, video (1:30-1:45)).

[45] ROA.2366 (Exhibit J, video (0:10-2:43)).

to come to Olmos Park and protest the Ordinance; and (iii) dispatch told them as much.[46]

- Prior to this gathering, Valenciano researched open carry activists, specifically Grisham.[47] He knew what he looked like and what his purpose was. He shared this information with employees and other cities, including Alamo Heights dispatch.

- Valenciano did not want them to protest because, as he testified, he thought Grisham and Everard were conveying a message of "rebellion . . . based on the totality of circumstances of what [he] encountered already."[48]

Grisham and Everard should benefit from the reasonable inference that Valenciano shared his knowledge and information with Ruiz, Vera, and Lopez. The Olmos police department is indisputably a small department, and they had many discussions about their interactions with other protestors, as well as Chief Valenciano's policy of how to handle them. The record supports discussions, emails, bulletins, and PowerPoints that provide for a collective knowledge. *See*

---

[46] ROA.2382 (Exhibit R, video (4:31-9:47); ROA.2384.

[47] ROA.2483-2491.

[48] ROA.3551 (191:17-25, 193:5-10).

*Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983) (defining the collective knowledge doctrine, for the purpose of determining whether an arresting officer had probable cause to arrest, "where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all"); *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (holding the doctrine applies "so long as there is some degree of communication' between the acting officer and the officer who has knowledge of the necessary facts." (quoting *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007))).

Had the panel evaluated the whole picture, and considered the record in a light most favorable to Appellants, it would have recognized, that at the very least, there was a genuine dispute as to whether the officers really thought there was actually a crime, or if they were blindly following Valenciano's squash the rebel policy, which they have done several times leading up to March 27, 2022. Considering this conflict, an en banc hearing should be granted to determine whether a reversal of the panel decision is warranted regarding the application of probable cause, with careful consideration of the "whole picture."

Even if probable cause existed, Grisham and Everard presented objective evidence that they were treated differently than anyone else which affords them the exception under *Nieves v. Bartlett*, 139 S.Ct. 1717 (2019). The panel disagreed by

14

suggesting the magistrate identified that another protestor was arrested.[49]  There is nothing in the record to support the inference that the individual arrested was nothing more than a spectator, whether they were arrested for any involvement in the protest or that they were armed.  What is in the record is that Chief Valenciano testified that he was being "flanked" by several armed protestors.[50]  However, to Grisham and Everard's knowledge, they were the only ones arrested, because they were the symbol of the rebellion that Appellees desired to squash.  En banc should be granted to determine whether probable cause exists, and if so, whether Appellants' retaliation claim still survives.

## CONCLUSION & PRAYER

Because the panel's February 26, 2024, decision squarely conflicts with previous decisions of this Court and established law, Grisham and Everard respectfully request rehearing en banc in order to secure and maintain uniformity of this Court's decisions.  Grisham and Everard request reversal of the panel's decision for failure to view the "whole picture" and evidence at summary judgment in the light most favorable to Grisham and Everard.

---

[49] Doc. 87-1, pp. 8-9.

[50] ROA.3540 (146:9-15).

S/ Brandon J. Grable

**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@g2.law
**Grable Grimshaw, P.L.L.C.**
1603 Babcock Road Suite 280
San Antonio, TX 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**ATTORNEY FOR
PLAINTIFFS-APPPELLANTS**

# CERTIFICATE OF SERVICE

I certify that on March 11, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Fifth Circuit, using the electronic case filing ("ECF") system of the Court. All counsel of record were served via electronic service through the ECF system.

Denton Navarro Rocha Bernal & Zech
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone: (210) 227-3243
Facsimile: (210) 225-4481
PATRICK C. BERNAL
pbernalrampagelaw.com
Texas State Bar No. 02208750
ADOLFO RUIZ
Texas State Bar No. 17385600
aruizrampage1aw.com
***Attorneys for Appellees***

S/ Brandon J. Grable
Brandon J. Grable

Date: March 11, 2024

17

# **CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 2150 words.


2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14 pt font.


                                                                S/ Brandon J. Grable